GINA L. DURHAM (SBN 295910)
gina.durham@dlapiper.com
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Telephone:  415.836.2500

MELISSA A. REINCKENS (SBN 314657)
melissa.reinckens@dlapiper.com
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, California 92101-4297
Tel:  619.699.2700
Fax:  619.699.2701

*Attorneys for Plaintiff
Rakuten Medical, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| RAKUTEN MEDICAL, INC,<br><br>Plaintiff,<br><br>v.<br><br>ILLUMINA, INC.,<br><br>Defendant. | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Rakuten Medical, Inc. ("Rakuten Medical") hereby files this Complaint for Declaratory Judgment against Defendant Illumina, Inc. ("Illumina") and alleges as follows:

### NATURE OF THE ACTION

1. This is an action for declaratory judgment arising under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. and the Lanham Act, 15 U.S.C. § 1051, *et seq*.  Rakuten Medical seeks a declaratory judgment of non-infringement and no dilution of Illumina's trademark ILLUMINA.

-1-

## PARTIES

2. Rakuten Medical is a Delaware corporation having an office at 900 Concar Drive, Suite 400, San Mateo, California 94402. Rakuten Medical is a global biotechnology company aiming to become a leader in precision-targeted therapies through its proprietary, anti-cancer treatment platform.

3. Defendant Illumina is a Delaware corporation with an address at 5200 Illumina Way, San Diego, California 92122.

## JURISDICTION AND VENUE

4. This action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq*.

5. A real, immediate, substantial, and justiciable controversy exists between Rakuten Medical and Illumina with respect to the infringement and dilution of the trademark ILLUMINA, as set forth in greater detail below.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, with a specific remedy sought based upon the laws authorizing actions for declaratory judgment in the courts of the United States, 28 U.S.C. §§ 2201 and 2202, the basis for which is fully set forth below.

7. This Court has personal jurisdiction over Illumina because, upon information and belief, Illumina is domiciled and has a principle place of business in the State of California.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because, upon information and belief, Illumina regularly conducts business in this District.

9. Rakuten Medical seeks a declaratory judgment under the provisions of 28 U.S.C. §§ 2201 and 2202.

## GENERAL ALLEGATIONS

**A. Rakuten Medical's Groundbreaking Anti-Cancer Treatment Platform and Trademarks.**

10. Rakuten Medical is a biotechnology company developing precision-targeted therapies through its proprietary, anti-cancer treatment platform.

11. The inspiration for Rakuten Medical, a decade old company, and its anti-cancer innovations arises from the collaboration of its founder, Miguel Garcia-Guzman and its current CEO, Hiroshi "Mickey" Mikitani ("Mikitani").

12. In 2012, Mikitani, the founder of the major e-commerce website Rakuten Ichiba and the broader Rakuten Group of companies, including Rakuten, Inc., learned his father was diagnosed with cancer.

13. Mikitani traveled across the world to consult with cancer researchers in an effort to save his father's life. In 2013, Mikitani was introduced to photoimmunotherapy by Dr. Hitisaka Kobayashi ("Dr. Kobayashi") of the National Institute of Cancer, and then to Miguel Garcia-Guzman, the founder and then-CEO of Aspyrian Therapeutics.

14. Ultimately, cancer took Mikitani's father, transforming Mikitani's mission from saving his father's life to saving the lives of others fighting cancer. In 2013, Mikitani invested in and became part of the leadership in Aspyrian Therapeutics, eventually lending the company the weight of the Rakuten name and, in 2018, becoming its CEO.

15. In or around June 2019, Rakuten Medical adopted the trademark ILLUMINOX for use in connection with the development and promotion of its proprietary, anti-cancer, photoimmunotherapy technology platform. ILLUMINOX is a technology platform comprised of drug, medical device, and other related technologies.

16. Rakuten Medical's ILLUMINOX-branded anti-cancer treatment platform involves a drug, consisting of an antibody conjugated to a light-excitable dye. The antibody carries the dye to a specific antigen on a tumor's cell surface.

17. Then the drug-infused tumors are illuminated with a non-thermal light, which activates the light-excitable dye, which in turn is believed to result in rapid and selective cell killing and tumor necrosis with minimal effects on surrounding normal tissue.

18. The ILLUMINOX-branded platform has the potential to give rise to many different drug-device combinations, each targeting a specific tumor type and/or tumor location. Treatments based on the ILLUMINOX-branded platform are also being studied for the potential to induce innate and adaptive cancer immunity in treated patients.

19. Dr. Kobayashi and his colleagues of the National Institutes of Health ("NIH") developed this anti-cancer photoimmunotherapy platform, and the NIH exclusively licensed said platform to Rakuten Medical for development and commercialization on a worldwide basis.

20. Rakuten Medical continues to develop, advertise, and promote its ILLUMINOX-branded anti-cancer technology platform and drugs and devices developed on said platform.

21. In 2018, Rakuten Medical's first investigational product developed on the ILLUMINOX-branded platform received a "Fast Track" designation from the U.S. Food and Drug Administration.

22. In 2019, the investigational product developed on the ILLUMINOX-branded platform received a similar designation from the Japan Ministry of Health, Labor and Welfare ("MHLW").

23. In June 2020, the MHLW notified Rakuten Medical that its first investigational product developed on the ILLUMINOX-branded platform would be reviewed under the MHLW's Conditional Early Approval System ("CEAS"). The

1  CEAS speeds up the regulatory review and approval process, bringing potentially life-saving treatments to patients faster.

24. Rakuten Medical recently announced strategic alliance collaboration agreements with cancer treatment centers to advance the development of new cancer therapies based on Rakuten Medical's proprietary ILLUMINOX-branded technology platform.

25. In an agreement with The University of Texas, The MD Anderson Cancer Center ("MD Anderson"), Rakuten Medical and MD Anderson agreed to collaborate to conduct studies on drugs and devices developed on Rakuten Medical's ILLUMINOX-branded platform.

26. A global Phase III clinical trial of a drug-device combination developed on Rakuten Medical's ILLUMINOX-branded technology platform is currently underway.

27. On June 20, 2019, Rakuten Medical filed a U.S. trademark application for the mark ILLUMINOX, which was assigned Serial No. 88/482,028, which currently covers "pharmaceutical preparations for the treatment and prevention of cancer" in Class 5 and a "medical device for treating and preventing cancer" in Class 10 (the "ILLUMINOX Mark"). Electronic records from the United States Patent & Trademark Office's ("USPTO") Trademark Status and Document Retrieval ("TSDR") system for the ILLUMINOX Mark are attached as Exhibit 1.

28. On July 3, 2019, Rakuten Medical filed a U.S. trademark application for the mark ILLUMINOXHIKARI, which was assigned Serial No. 88/499,896, which currently covers "pharmaceutical preparations for the treatment and prevention of cancer" in Class 5 and a "medical device for treating and preventing cancer" in Class 10 (the "ILLUMINOXHIKARI Mark"). Electronic records from the USPTO's TSDR system for the ILLUMINOXHIKARI Mark are attached as Exhibit 2.

29. On July 8, 2019, Rakuten Medical filed a U.S. trademark application for the mark イルミノックス, which translates to ILLUMINOX in Katakana and which was assigned Serial No. 88/504,623, which currently covers "pharmaceutical preparations for the treatment and prevention of cancer" in Class 5 and a "medical device for treating and preventing cancer" in Class 10 (the "ILLUMINOX (in Katakana) Mark"). Electronic records from the USPTO's TSDR system for the ILLUMINOX (in Katakana) Mark are attached as Exhibit 3.

30. The ILLUMINOX Mark, ILLUMINOXHIKARI Mark and ILLUMINOX (in Katakana) Mark are hereinafter collectively referred to as the "Rakuten Medical Marks."

31. Rakuten Medical's ILLUMINOX-branded technology platform is offered to and/or advertised to highly educated and sophisticated consumers working in the specialized field of medicine and, more specifically, cancer treatment/oncology.

32. Those interfacing with the ILLUMINOX-branded platform become or will become extremely familiar with both Rakuten Medical and its offerings during the highly specialized prescription pharmaceutical drug and medical device purchasing process, leaving no doubt for such consumers as to the source or association of those offerings. Such purchases are conducted through a highly regulated and specialized distribution channel specific to healthcare providers and cancer treatment centers.

33. Moreover, the ILLUMINOX-branded platform appears to consumers as the brand name of a cancer treatment development platform name offered in connection with the company brand RAKUTEN MEDICAL and, as such, does not appear to consumers as the name of a company.

B. **Illumina and its Trademarks for Genomic Sequencing**

34. Illumina began doing business in or around 1998 as a manufacturer of products for large-scale genetic analysis, and it offers products and services to research institutions for assisting with human genome sequencing.

35. Illumina is primarily known as a human genetic analysis company, which offers information and resources to research institutions for purposes such as sequencing the human genome.

36. Illumina is listed as owner of record for the following U.S. trademark registrations:

| Mark | Classes | Reg. No. | Reg. Date |
| --- | --- | --- | --- |
| ILLUMINA | Services in Class 40 | 2471539 | 10/08/2002 |
| ILLUMINA | Goods in Class 1 and services in Class 42 | 2632507 | 08/18/2000 |
| ILLUMINA | Goods in Class 9 | 2756703 | 8/18/2000 |
| ILLUMINA | Goods in Classes 1 and 9 and services in Classes 40 and 42 | 4268307 | 06/11/2012 |
| ILLUMINA | Goods in Classes 5, 9 and 10 and services in Class 42 | 4502341 | 06/11/2012 |

37. Illumina also owns U.S. Trademark Application Serial No. 87/750,316 for the designation ILLUMINA covering services in Classes 35, 36, 41, 42 and 44.

38. Illumina also claims common law rights in the ILLUMINA trademark.

39. Collectively, the designations referenced in paragraphs 36 - 38 shall be hereinafter referred to as the "Illumina Marks."

40. Illumina's goods and services set forth in the registrations and application for the Illumina Marks describe goods and services in the field of genomic sequencing and research, not cancer treatment platforms.

41. Indeed, nothing in the goods and services set forth in the registrations and application for the Illumina Marks even reference cancer or oncological

COMPLAINT FOR DECLARATORY JUDGMENT

EAST\175635537.3

research; instead, all of the goods and services relate to clinical research, diagnostics, and testing, not actual treatment of conditions (and certainly not treatment of cancer).

42. The majority of the registrations for the Illumina Marks cover narrowly worded recitations of products and services specific to genomic sequencing (e.g., Reg. Nos. 2471539; 2632507; and 2756703).

43. Even the more broadly worded registration for ILLUMINA (*i.e.*, Reg. No. 4,502,341) covers narrow types of reagents, diagnostic instruments for nucleic acid sequencing and diagnostic services related to sequencing nucleic acids.

44. To the extent that Illumina provides any services related to oncology, those services, upon information and belief, are limited to the narrow sector of genomic sequencing research, and Illumina's own website for its purported cancer services at https://www.illumina.com/areas-of-interest/cancer.html depicts the heading "Today's genomic solutions for tomorrow's cancer breakthroughs;" moreover, the page's content entirely relates to genomic sequencing.

45. None of the registrations or application for the Illumina Marks claim protection for pharmaceutical preparations, medical devices, or cancer treatment platforms.

46. On information and belief, Illumina is prohibited by certain government regulations from claiming that its genomic sequencing machine products can be used as a means to treat cancer.

47. In fact, Illumina's website at www.Illumina.com reiterates the company's mission as a manufacturer of genetic sequencing products and services, stating, "our goal is to apply innovative technologies to the analysis of genetic variation and function, making studies possible that were not even imaginable just a few years ago."

EAST\175635537.3

48. On information and belief, Illumina's customers are highly sophisticated and educated professionals operating in the field of researching human genetics and genetic sequencing.

49. On information and belief, Illumina does not target customers in the healthcare provider market, which is fundamentally different than the market for researching of human genetics and genetic sequencing.

50. On information and belief, the Illumina Marks are used as the brand name of a company and are not used as the brand name of any specific pharmaceutical or treatment platform.

C. **The Parties' Uses of Their Respective Marks.**

51. The consumers for both Illumina's products and services and Rakuten Medical's ILLUMINOX-branded platform are highly educated, sophisticated professionals.

52. Consumers of the ILLUMINOX-branded platform sit at the cutting edge of technology and are generally oncologists, oncology surgeons, hospitals, and cancer treatment centers with deep institutional knowledge of cancer therapy development.

53. Upon information and belief, Illumina's consumers are versed in the highly technical field of genomic sequencing, a field populated by predominantly highly educated scientific professionals.

54. Upon information and belief, Illumina's products and services cost tens-of-thousands of dollars (on the low end) and reach far higher.

55. The parties' respective products and services are unlikely to be marketed or sold to the same individuals, and if they were, the respective consumer/recipients of those products and services would likely be a highly educated, medical professional making purchases for both genomic researching purposes (in the case of Illumina's offerings) and cancer treatment purposes (in the case of Rakuten Medical).

56.     Upon information and belief, no consumers have been confused as to the source of origin of the ILLUMINOX-branded platform, or as to an association or affiliation between Rakuten Medical and Illumina.

D. **Illumina's Opposition Against Rakuten Medical**.

57.     In November 2019, Illumina contacted Rakuten Medical, alleging that use of ILLUMINOX creates a likelihood of confusion with the Illumina Marks, an allegation which Rakuten Medical denied.

58.     In an effort to reach an amicable resolution to the dispute, the parties discussed settlement in December 2019, but settlement discussions ultimately failed.

59.     Settlement discussions drew out between the parties over months, finally resulting in the parties scheduling a business-to-business settlement discussion for March 9, 2020.

60.     In early March, however, Illumina abruptly and without explanation cancelled the business-to-business settlement discussion.

61.     Days later, on March 10, 2020, Rakuten Medical learned that Illumina filed a notice of opposition against the Rakuten Medical Marks (the "Notice of Opposition") with the Trademark Trial and Appeal Board ("TTAB") for the USPTO on March 3, 2020.  A copy of the Notice of Opposition is attached as Exhibit 4, and the opposition proceeding is hereinafter referred to as the "Opposition."

62.     In its Notice of Opposition, Illumina stated, *inter alia*, that:
- "The Illumina company name and mark are famous within the science, medical and technology communities"
- The applications for the Rakuten Medical Marks "cover goods overlapping with, related to, and complementary to" the goods and services covered in Illumina's trademark registrations;

- The parties' "respective goods and services are marketed, or will be marketed in the same channels of trade and industries;" and
- The Rakuten Medical Marks, "when used on or in connection with the goods as they are identified in the" applications for the Rakuten Medical Marks, will "so resemble Illumina's ILLUMINA ® mark . . . as to cause confusion, or to cause mistake or to deceive within the meaning of Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d)."

63. Since such time, the parties have not rescheduled the business-to-business settlement discussion, although counsel for the parties have engaged in some continuing discussions.

64. Illumina proceeded with the Opposition, and the parties held the required discovery conference in the Opposition on May 13, 2020 (the "Discovery Conference"), at which Illumina's counsel stated that Illumina not only objected to registration of the Rakuten Medical Marks but also to Rakuten Medical's use of ILLUMINOX as Illumina considered such use to infringe on Illumina's trademark rights.

65. Similarly, Illumina's Notice of Opposition makes clear that it not only objects to Rakuten Medical's registration of the Rakuten Medical Marks, but also to use of ILLUMINOX, alleging that the Rakuten Medical Marks are "highly similar" to the Illumina Marks and "cover goods overlapping with, related to, and complementary to" the goods and services offered by Illumina under the Illumina Marks.

66. Illumina's statements in the parties' Discovery Conference on May 13, 2020 further show that Illumina intends to prevent the registration (a remedy available in the Opposition) *and* use of ILLUMINOX by Rakuten Medical (a remedy available only in federal court and not in the Opposition).

67. Rakuten Medical uses, and continues to expand its use of, ILLUMINOX in connection with its ILLUMINOX-branded platform.

68. Rakuten Medical has not experienced any reports of customer confusion between its use of ILLUMINOX in connection with its ILLUMINOX-branded platform and the Illumina Marks.

69. Illumina essentially seeks to monopolize all ILLUM-formative marks in the medical industry. Despite this, a number of third parties own and use similar ILLUM-formative marks in connection with products and services that are more similar to Rakuten Medical's products services than Illumina's products and services, including, without limitation:

- Reg. No. 3,951,065 for ILLUMINOSS covering medical devices and instruments, namely, medical devices and surgical instruments for use in orthopedic and trauma surgical procedures;
- Reg. No. 5,724,408 for ILLUMINIZER (and design) covering various medical diagnostic instruments and apparatus;
- Reg. No. 4,534,705 for ILLUMASK covering phototherapeutic light delivery apparatus for medical purposes; and
- Reg. No. 5,973,459 for ILLUMISITE covering surgical and medical instruments, among other products.

70. As such, while Illumina has not yet sought relief in federal court, it is inevitable Illumina will seek such a claim in the immediate future as Rakuten Medical continues its use of ILLUMINOX.

71. Based on the foregoing, there exists a substantial, actual and justiciable controversy between Rakuten Medical and Illumina as to the non-infringement of the Rakuten Medical Marks on the Illumina Marks and as to the lack of dilution of the Illumina Marks, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

72. Rakuten Medical's use of ILLUMINOX does not infringe or dilute the Illumina Marks.

73. A declaration of rights is necessary and appropriate to declare the rights of the parties in a manner that avoids irreparable injury to Rakuten Medical, for which there is no adequate remedy at law and that resolves the disputes in a manner consistent with equity.

## CLAIMS FOR RELIEF

### COUNT I

**(Declaratory Judgment of Noninfringement of Federal Trademarks, 15 U.S.C. § 1114)**

74. Rakuten Medical incorporates by reference herein all allegations set forth in ¶¶ 1-73 of this Complaint.

75. This claim arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

76. There is a real, immediate, substantial, and justiciable controversy between Rakuten Medical and Illumina concerning whether the Rakuten Medical's use of ILLUMINOX infringes the Illumina Marks.

77. In filing the Notice of Opposition, Illumina alleged that Rakuten Medical's use of ILLUMINOX infringes the Illumina Marks under 15 U.S.C. § 1052.

78. During the course of the Opposition, including at the Discovery Conference, Illumina and its counsel made clear that Illumina objects not only to registration of the Rakuten Medical Marks but also to Rakuten Medical's use of ILLUMINOX.

79. Use of ILLUMINOX by Rakuten Medical has not caused, and is not likely to cause, confusion, or to cause mistake, or to deceive in violation of 15 U.S.C. § 1114(1).

80. Accordingly, Rakuten Medical is not liable for federal trademark infringement of a registered trademark in connection with its use of ILLUMINOX.

-13-
COMPLAINT FOR DECLARATORY JUDGMENT

## COUNT II

## (Declaratory Judgment of Noninfringement of Trademarks and Unfair Competition, 15 U.S.C. § 1125(a)(1)(A))

81. Rakuten Medical incorporates by reference herein all allegations set forth in ¶¶ 1-80 of this Complaint.

82. Rakuten Medical's use in commerce of ILLUMINOX is not likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Rakuten Medical with Illumina, or as to the origin, sponsorship, or approval of Rakuten Medical, its products, and its commercial activities, by or with Illumina, in violation of 15 U.S.C. § 1125(a)(1)(A).

83. Accordingly, Rakuten Medical is not liable for federal trademark infringement, false designation of origin, or unfair competition in connection with its use of ILLUMINOX.

## COUNT III

## (Declaratory Judgment of a Right to Register)

84. Rakuten Medical incorporates by reference herein all allegations set forth in ¶¶ 1-83 of this Complaint

85. Rakuten Medical's applications for registration for the Rakuten Medical Marks, namely, U.S. Application Serial Nos. 88/482,028 for ILLUMINOX, 88/499,896 for ILLUMINOXHIKARI, and 88/504,623 for イルミノックス are eligible for registration on the Principal Register. Illumina's Opposition to these applications should therefore be denied.

## COUNT IV

## (Declaratory Judgment of No Dilution, 15 U.S.C. § 1125(c))

86. Rakuten Medical incorporates by reference all allegations set forth in ¶¶ 1-85 of this Complaint.

87. None of the Illumina Marks is distinctive and famous within the meaning of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(c).

88. None of the Illumina Marks was famous before Rakuten Medical began advertising or using the ILLUMINOX mark.

89. Rakuten Medical's use of the ILLUMINOX mark does not dilute and is not likely to dilute the Illumina Marks and such use is not likely to lessen the capacity of such the Illumina Marks to identify and distinguish Illumina's goods and services to the extent that such marks do.

90. Accordingly, Rakuten Medical is not liable for federal dilution in connection with its use of the ILLUMINOX mark.

## PRAYER FOR RELIEF

WHEREFORE, Rakuten Medical requests the following relief in conjunction with the allegations set forth above in this Complaint:

A. Entry of an Order of this Court declaring that Rakuten Medical's use of ILLUMINOX does not infringe the Illumina Marks under 15 U.S.C. § 1114;

B. Entry of an Order of this Court declaring that Rakuten Medical's use of ILLUMINOX does not infringe the Illumina Marks under 15 U.S.C. § 1125(a);

C. Entry of an Order of this Court declaring that Rakuten Medical's use of ILLUMINOX does not dilute the Illumina Marks under 15 U.S.C. § 1125(c);

D. An appropriate Order directing the Trademark Trial and Appeal Board to find in favor of Rakuten Medical in the Opposition and requiring the Director of the United States Patent and Trademark Office to effectuate the Court's decision;

E. Entry of an Order enjoining Illumina, its agents, servants, officers, directors, employees, attorneys, privies, representatives, successors, assigns, and parent and subsidiary entities, and any and all persons in act of concert of participation with any of them, from threatening to assert or asserting the Illumina Marks against Rakuten Medical, its agents, employees, customers, partners, resellers, or distributors, for their use of ILLUMINOX;

F. Entry of an Order of this Court assessing all costs associated with this action to Rakuten Medical;

-15-

COMPLAINT FOR DECLARATORY JUDGMENT

EAST\175635537.3

G. Entry of an Order of this Court declaring this case exceptional and awarding Rakuten Medical reasonable attorneys' fees; and

H. All other relief, both interim and permanent, as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Rakuten Medical hereby makes a demand for a trial by jury as to all issues in this lawsuit so triable.

Dated: August_5, 2020

DLA PIPER LLP (US)

By:/s/ *Melissa A. Reinckens*
GINA L. DURHAM
(SBN 295910)
MELISSA A. REINCKENS
(SBN 314657)

*Attorneys for Plaintiff*
*Rakuten Medical, Inc.*