1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RAKUTEN MEDICAL, INC., | Case No. 20-CV-05430-LHK |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| ILLUMINA, INC., | |
| Defendant. | |

Plaintiff Rakuten Medical, Inc. ("Plaintiff") sues Defendant Illumina, Inc. ("Defendant") for a declaration of non-infringement, right to register, and non-dilution. Before the Court is Defendant's motion to dismiss Plaintiff's complaint. ECF No. 23 ("Mot.").[1] Having considered the parties' briefing, the relevant law, and the record in this case, the Court DENIES Defendant's motion to dismiss.

I.      **BACKGROUND**

   A.   **Factual Background**

_____

[1] Defendant's motion to dismiss contains a notice of motion paginated separately from the memorandum of points and authorities in support of the motion. ECF No. 23 at i. Civil Local Rule 7-2(b) provides that the notice of motion and points and authorities must be contained in one document with the same pagination.

1

United States District Court
Northern District of California

1    Plaintiff is a Delaware corporation with an office in San Mateo, California.  Defendant is a

2  Delaware corporation with its principle place of business in San Diego, California.  Complaint at ¶

3  2–3, 7, ECF No. 1 ("Compl.").

4    Plaintiff alleges that it is a "biotechnology company developing precision-targeted

5  therapies through its proprietary, anti-cancer treatment platform."  *Id.* at ¶ 11.  In or around June

6  2019, Plaintiff adopted the trademark ILLUMINOX for its "proprietary, anti-cancer,

7  photoimmunotherapy technology platform," which is "comprised of drug, medical device, and

8  other related technologies."  *Id.* at ¶ 15.  Plaintiff continues to "develop, advertise, and promote its

9  ILLUMINOX-branded anti-cancer technology platform and drugs and devices developed on said

10  platform."  *Id.* at ¶ 20.

11    In 2018, a product developed on the ILLUMINOX-branded platform received a "Fast

12  Track" designation from the U.S. Food and Drug Administration and a similar designation from

13  the Japan Ministry of Health, Labor and Welfare.  *Id.* at ¶¶ 20–21.  Plaintiff has also reached an

14  agreement with the MD Anderson Center at the University of Texas to "collaborate to conduct

15  studies and devices developed on Rakuten Medical's ILLUMINOX-branded platform."  *Id.* at ¶

16  25.

17    On June 20, 2019, Plaintiff filed a U.S. trademark application for the mark ILLUMINOX,

18  which covers "pharmaceutical preparations for the treatment and prevention of cancer" and a

19  "medical device for treating and preventing cancer."  *Id.* at ¶ 27.

20    On July 3, 2019, Plaintiff filed a U.S. trademark application for the mark

21  ILLUMINOXHIKARI, which covers "pharmaceutical preparations for the treatment and

22  prevention of cancer" and a "medical device for treating and preventing cancer."  *Id.* at ¶ 28.

23    On July 8, 2019, Plaintiff filed a U.S. trademark application for the mark ILLUMINOX

24  translated into Katakana, which covers "pharmaceutical preparations for the treatment and

25  prevention of cancer" and a "medical device for treating and preventing cancer."  *Id.* at ¶ 29.

26    The Court will henceforth refer collectively to the ILLUMINOX mark, the

27  ILLUMINOXKARI mark, and the ILLUMINOX mark (translated into Katakana) as the "Rakuten

28
2

1    Medical marks."

2         Defendant is the owner of the ILLUMINA U.S. trademark, which covers goods and

3    services in a number of trademark classes.  The Court will refer to this collection of marks as the

4    "Illumina marks."  *Id.* at ¶¶ 36–39.  Plaintiff alleges that although the Illumina marks cover

5    products and services related to genomic sequencing and other diagnostic instruments, "[n]one of

6    the registrations or application for the Illumina marks claim protection for pharmaceutical

7    preparations, medical devices, or cancer treatment platforms."  *Id.* at ¶¶ 42–45.

8         In August of 2019, Illumina filed letters of protest with the United States Patent and

9    Trademark Office that argued that the ILLUMINOX applications should be refused registration as

10   a result of Illumina's prior trademark rights.  ECF No. 23-2, at ¶ 2.  According to Plaintiff, in

11   November of 2019, Defendant contacted Plaintiff and alleged that the use of ILLUMINOX creates

12   a likelihood of confusion with the Illumina marks.  Plaintiff denied this allegation in its

13   correspondence with Defendant.  Compl. at ¶ 57.  The parties discussed settlement of the dispute

14   beginning in December of 2019 and scheduled a settlement discussion for March 9, 2020.  *Id.* at ¶

15   60.  However, Plaintiff alleges that in early March, Defendant cancelled the March 9, 2020

16   settlement discussion.  *Id.* at ¶ 60.

17        On March 3, 2020, Defendant filed a "Notice of Opposition" against the Rakuten Medical

18   marks with the Trademark Trial and Appeal Board ("TTAB").  The Notice of Opposition

19   explained that "the Applications cover goods overlapping with, related to, and complementary to

20   Illumina's Goods and Services and covered under Illumina's Registrations and Prior Application,

21   and the respective goods and services are marketed, or will be marketed in the same channels of

22   trade and industries."  ECF No. 1-1, Ex. 4 at 11 ("Notice of Opposition").  The Notice of

23   Opposition went on to explain that the applications for the Rakuten Medical marks will so

24   resemble the Illumina marks "as to cause confusion, or to cause mistake or to deceive within the

25   meaning of Section 2(d) of the Trademark Act."  *Id.* at ¶ 62.

26        Prior to Plaintiff filing a complaint in the instant case, the parties held a required discovery

27   conference on May 13, 2020, in connection with the TTAB proceedings.  Plaintiff alleges that

28

United States District Court
Northern District of California

3

1    during the TTAB discovery conference, Defendant's counsel stated that Defendant not only

2    objected to Plaintiff's registration of the Rakuten Medical marks, but also to Plaintiff's use of

3    ILLUMINOX because Defendant considered its use to infringe on Defendant's trademark rights.

4    *Id.* at ¶ 64.

5            Plaintiff alleges that Defendant's Notice of Opposition and Defendant's statements at the

6    May 13, 2020 TTAB discovery conference make clear that Defendant not only opposes the

7    registration of the Rakuten Medical marks, but also the use of ILLUMINOX more generally by

8    Plaintiff.  *Id.* at ¶¶ 65–66.

9        **B.  Procedural Background**

10           On August 5, 2020, Plaintiff filed a complaint in the instant action.  ECF No. 1

11   ("Compl.").  Plaintiff's complaint alleges causes of actions for: (1) a declaratory judgment of

12   noninfringement of federal trademarks; (2) a declaratory judgment of noninfringement of

13   trademarks and unfair competition; (3) a declaratory judgment of a right to register; (4) a

14   declaratory judgment of no dilution.  *Id.* at ¶¶ 74–90.

15           On October 9, 2020, Defendant filed a motion to dismiss, alleging that there is no actual

16   case or controversy between the parties.  ECF No. 23 ("Mot.").  On October 23, 2020, Plaintiff

17   filed an opposition.  ECF No. 26 ("Opp.").  On October 30, 2020, Defendant filed a reply.  ECF

18   No. 30 ("Reply").

19   **II.      LEGAL STANDARD**

20       **A.  Motion to Dismiss Under 12(b)(1)**

21           A defendant may move to dismiss for lack of subject matter jurisdiction pursuant to Rule

22   12(b)(1) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(1).  Although lack of

23   statutory standing requires dismissal for failure to state a claim under Rule 12(b)(6), lack of

24   Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1).

25   *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (explaining article III standing

26   requirement).

27           "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v.*

28

United States District Court
Northern District of California

*Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.*  The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (internal citations and quotation marks removed).  "[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.  "In resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*

Once a defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the Court's jurisdiction.  *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### B.  Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotations marks omitted).  When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal questions marks omitted).  Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

United States District Court
Northern District of California

5

## III.   DISCUSSION

The Declaratory Judgment Act permits a federal court to "declare the rights and other legal relations" of parties to "a case of actual controversy."  28 U.S.C. § 2201.  Courts use "a two-part test . . . to determine whether a declaratory judgment is appropriate.  First, the court must determine if there exists an actual case or controversy within the court's jurisdiction.  Second, if so, the court must decide whether to exercise its jurisdiction."  *Neilmed Prod., Inc. v. Med.-Systems, Inc.*, 472 F. Supp. 2d 1178, 1179-80 (N.D. Cal. 2007); *Principle Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2004) (same).

Defendant argues that this case satisfies neither prong of the two-part test.  First, Defendant argues that there is no actual case or controversy between Plaintiff and Defendant.  Second, Defendant argues that the Court should decide not to exercise the Court's jurisdiction over this action.  The Court finds that neither argument is persuasive.

### A.  The Action is Ripe Under the Declaratory Judgment Act

Under the Declaratory Judgment Act ("DJA"), the Court must first determine whether there is "a real case of actual controversy."  28 U.S.C. § 2201; *Robinson*, 394 F.3d at 669.  The "actual controversy" requirement of the DJA is the same as the "case or controversy" requirement of Article III of the United States Constitution.  *Robinson*, 394 F.3d at 669.

A plaintiff must allege facts that "under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  The Ninth Circuit has explained that "trademark disputes have sufficiently ripened into an actual controversy under the [DJA] when 'the plaintiff has a real and reasonable apprehension that he will be subject [to suit].'"  *Neilmed*, 472 F. Supp. 2d at 1180 (quoting *Chesebrough-Pond's v. Faberge*, 666 F.2d 393, 396 (9th Cir. 1982)).

"In determining 'if the threat perceived by the plaintiff is real and reasonable,' the court focuses 'upon the position and perceptions of the plaintiff' and '[t]he acts of the defendant [are] . . . examined in view of their likely impact on competition and the risks imposed upon the

6

1    plaintiff.'" *Id.* (quoting *Chesebrough-Pond's*, 666 F.2d at 396) (alterations in original).  The

2    showing of apprehension "need not be substantial" when an allegedly infringing mark is in use.

3    *Societe de Conditionnement en Aluminium v. Hunter Engineering Co.*, 655 F.2d 938, 944 (9th Cir.

4    1981).

5         Defendant does not dispute that it has objected to Plaintiff's use of ILLUMINOX as the

6    brand name of a drug or device.  However, Defendant argues that Plaintiff cannot establish an

7    actual controversy regarding Plaintiff's use of the ILLUMINOX mark because Plaintiff has taken

8    no significant, concrete steps to use ILLUMINOX on a drug or device.  Mot. at 6.  Moreover,

9    Defendant points out that Plaintiff concedes in the opposition brief that Plaintiff does not currently

10   use ILLUMINOX on a drug or device.  *See* Opp. at 11 ("Rakuten Medical does not use

11   ILLUMINOX directly on a drug or medical device.").  Defendant therefore argues that because it

12   has only objected to Plaintiff's use of ILLUMINOX on a drug or device, Plaintiff "cannot

13   establish a real and reasonable apprehension that it would be subject to liability for the use of

14   ILLUMINOX on drugs or devices."  Reply at 1.

15        Plaintiff argues that Defendant's objection extends beyond an opposition to Plaintiff's use

16   of ILLUMINOX on drugs or devices, and that Defendant has made clear that it opposes Plaintiff's

17   use of ILLUMINOX on Plaintiff's ILLUMINOX platform and for other goods and services.  Opp.

18   at 1.  Plaintiff further argues that because Plaintiff has already begun to use ILLUMINOX in

19   relation to its platform and other collaborations, there is an actual case or controversy between the

20   parties.  Opp. at 3.

21        In support of Plaintiff's contention that Defendant's objection to Plaintiff's use of the

22   ILLUMINOX mark extends beyond drugs and devices, Plaintiff cites three pieces of evidence.

23   First, Plaintiff alleges that Defendant's Notice of Objection to the TTAB evinces an objection to

24   Plaintiff's use of the ILLUMINOX mark beyond drugs and devices.  Second, Plaintiff argues that

25   discussions between the parties confirm Defendant's objection.  Finally, Plaintiff argues that

26   Defendant's refusal to enter into a settlement agreement demonstrates that Defendant objects to

27   Plaintiff's use of ILLUMINOX more broadly.  The Court considers these arguments in turn.

28

Case No. 20-CV-05430-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

First, Plaintiff points to Defendant's Notice of Opposition, which states in relevant part that "the Applications cover goods overlapping with, related to, and complementary to Illumina's Goods and Services and covered under Illumina's Registrations and Prior Application, and the respective goods and services are marketed, or will be marketed in the same channels of trade and industries." ECF No. 1-1, Ex. 4 at 11. Plaintiff suggests that this language is expansive and implies that Defendant objects to the use of the ILLUMINOX mark on goods and services beyond drugs and medical devices. Opp. at 7–8.

Second, Plaintiff argues that Defendant's statements to Plaintiff's counsel confirm that Defendant objects more broadly to the use of the ILLUMINOX mark. Specifically, Plaintiff explains that during the parties' TTAB Rule 26(f) conference in May 2020, prior to Plaintiff filing a complaint in the instant case, "Illumina's counsel confirmed that Illumina took issue with Rakuten Medical's use of the ILLUMINOX mark, not merely the goods identified in the applications for registration." Opp. at 8–9. Furthermore, when the parties met in July 2020, again prior to the date Plaintiff filed a complaint in the instant case, Plaintiff reports that "Rakuten Medical's counsel pointedly asked whether the dispute relatedly [sic] solely to registrability or whether it extended to use of the mark, and Illumina's counsel continued to maintain its objection to the use of Rakuten Medical's ILLUMINOX mark on goods or services other than drugs and devices." *Id.* at 9. Defendant disputes this characterization of its counsel's comment during the July 2020 meeting, and Defendant instead argues that it continued to only object to the use of the ILLUMINOX mark on drugs or devices. Reply at 2.

Finally, Plaintiff points to Defendant's refusal to enter into a settlement agreement as evidence that there is an actual controversy between the parties. Op. at 16 Specifically, "Rakuten offered to withdraw its pending ILLUMINOX applications and to refrain from using ILLUMINOX on drugs, devices, or any other goods in the same classes of goods (International Classes 5 and 10)," in exchange for "Illumina's agreement not to oppose any trademark application Rakuten might file in the future for ILLUMINOX for services." Mot. at 4–5. Defendant argues that it refused the agreement because it does not understand the "types of goods

8

United States District Court
Northern District of California

1  or services on which Rakuten might use ILLUMINOX." *Id.* at 8.  Plaintiff, by contrast, argues

2  that "Illumina feigns ignorance as to Rakuten Medical's activities," and that Defendant's rejection

3  of a settlement offer demonstrates that Defendant objects to not only Plaintiff's use of the

4  ILLUMINOX mark on drugs or medical devices, but the use of ILLUMINOX more broadly.

5  Opp. at 16, 18.

6        Considering this evidence in total, the Court finds that it is a close question as to whether

7  "'plaintiff has a real and reasonable apprehension that [it] will be subject [to suit].'" *Neilmed*, 472

8  F. Supp. 2d at 1180 (quoting *Chesebrough-Pond's*, 666 F.2d 393 at 396 (9th Cir. 1982)).  The

9  Court notes that "[i]n determining 'if the threat perceived by the plaintiff is real and reasonable,'

10  the court focuses 'upon the position and perceptions of the plaintiff' and '[t]he acts of the

11  defendant [are] . . . examined in view of their likely impact on competition and the risks imposed

12  upon the plaintiff.'" *Id.* at 1180 (quoting *Chesebrough-Pond's*, 666 F.2d at 396) (alterations in

13  original).

14        The Court agrees with Defendant that, standing alone, each piece of Plaintiff's evidence is

15  likely insufficient to demonstrate "that there is a substantial controversy, between parties having

16  adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

17  judgment." *MedImmune*, 549 U.S. at 127.

18        However, taken together, Plaintiff's allegations are sufficient to establish that Plaintiff "has

19  a real and reasonable apprehension that [it] will be subject [to suit].'" *Neilmed*, 472 F. Supp. 2d at

20  1180.  Plaintiff's allegations regarding Defendant's Notice of Opposition are insufficient on their

21  own because, as Defendant correctly argues, the Notice of Opposition objects to Plaintiff's

22  registration of the Rakuten Medical marks for drugs and medical devices.  However, Plaintiff's

23  allegations regarding Defendant's Notice of Opposition are not considered in isolation.  *Coheso,*

24  *Inc. v. Can't Live With It, LLC*, 2017 WL 10434396, at *6 (N.D. Cal. Dec. 18, 2017) (explaining

25  that "even if the Letter in isolation is not enough to give Plaintiff a real and reasonable

26  apprehension of suit, it rises to that level when seen in light of the surrounding events.").  Rather,

27  the Court must consider those allegations together with Plaintiff's additional allegations that (1)

28

9

United States District Court
Northern District of California

1   during discussions between the parties Defendant repeatedly objected to Plaintiff's use of

2   ILLUMINOX on goods and services beyond drugs and medical devices, and (2) Defendant

3   rejected a settlement agreement that would have allowed Plaintiff to register the ILLUMINOX

4   mark on services in exchange for Plaintiff's agreement not to use the ILLUMINOX mark on

5   drugs, devices, or other goods of that kind.

6        In cases involving the Declaratory Judgment Act, courts examine "'[t]he acts of the

7   defendant . . . in view of their likely impact on competition and the risks imposed upon the

8   plaintiff.'" *Neilmed*, 472 F. Supp. 2d at 1180 (quoting *Chesebrough-Pond's*, 666 F.2d at 396)

9   (alterations in original).  Here, taken together, Plaintiff's allegations are sufficient to establish a

10  real and reasonable apprehension of suit and therefore impact Plaintiff's ability to continue to

11  develop its ILLUMINOX platform and other related goods and services using the ILLUMINOX

12  brand.  Defendant's actions demonstrate that it is likely to object to Plaintiff's use of

13  ILLUMINOX, and Plaintiff's continued use ILLUMINOX creates "a real and reasonable

14  apprehension that [Plaintiff] will be subject [to suit].'" *Neilmed*, 472 F. Supp. 2d at 1180.  The

15  Court therefore finds that an actual case or controversy exists between the parties.

16        The Court now turns to the second step in the Declaratory Judgment Act inquiry, whether

17  the Court should exercise its jurisdiction.

18   **B.  The Court Will Exercise Jurisdiction over the Action**

19        In *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942), the United States Supreme

20  Court identified several factors for courts to consider when determining whether to exercise

21  jurisdiction over a declaratory judgment action.  The Ninth Circuit has confirmed that "the

22  *Brillhart* factors remain the philosophical touchstone for the district court." *Government*

23  *Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998).  "The district court should avoid

24  needless determination of State law issues; it should discourage litigants from filing declaratory

25  actions as a means of forum shopping; and it should avoid duplicative litigation." *Id.* (internal

26  citations omitted).

27        The Ninth Circuit "has suggested other considerations that may weigh in favor of a district

28

Case No. 20-CV-05430-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

1  court's decision to dismiss or stay an action for declaratory relief: whether the declaratory action

2  will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose

3  in clarifying the legal relations at issue; whether the declaratory action is being sought merely for

4  the purposes of procedural fencing or to obtain a res judicata advantage; whether the use of a

5  declaratory action will result in entanglement between the federal and state court systems; the

6  convenience of the parties; and the availability of and relative convenience of other remedies."

7  *First Mercury Ins. Co. v. Great Divide Ins. Co.*, 203 F. Supp. 3d 1043, 1050 (N.D. Cal. 2016).

8      Defendant argues that the Court should not exercise jurisdiction over the declaratory

9  judgment action because there is too much uncertainty surrounding Plaintiff's use of

10  ILLUMINOX and the only ripe dispute between the parties is Plaintiff's right to register the

11  ILLUMINOX marks for drugs and devices, which is currently pending before the TTAB.  Mot. at

12  10–11.

13      However, the Court finds that neither the *Brillhart* factors nor the Ninth Circuit's

14  additional considerations support dismissing this action.  In the instant case, there are no state law

15  issues, only federal trademark issues.  Moreover, there is no evidence of duplicative litigation,

16  only this declaratory action and the pending opposition proceeding before the TTAB.  This

17  declaratory judgment action would "settle all aspects of the controversy" and "serve a useful

18  purpose in clarifying the legal relations at issue."  *First Mercury Ins. Co.*, 203 F. Supp. 3d at 1050.

19  Accordingly, the Court will exercise its discretion to take jurisdiction over this declaratory

20  judgment action in order to resolve the trademark infringement, right to register, and dilution

21  claims in this case.

22  **IV.    CONCLUSION**

23      For the foregoing reasons, the Court DENIES Defendant's motion to dismiss.

24  **IT IS SO ORDERED.**

25  Dated: April 19, 2021

26  

27  LUCY H. KOH
United States District Judge

28

Case No. 20-CV-05430-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

11